FRANCES WOODFIN AND WILLIAM AND JOHN WOODFIN, MINORS, BY THEIR NEXT FRIEND, BENJ. D. FINDLEY, APPELLANTS, VS. ADAM McNEALY, EXECUTOR OF WILLIAM McNEALY, DECEASED, AND NELSON O. J. STALEY, APPELLEES.

1. Property devised in trust, after payment of debts, is assets in the hands of an administrator, with the will annexed, for which the sureties on his bond are liable.
2. The trustee cannot get possession of such property, except through the administrator, and therefore, may sue him and his sureties for it; and such suit may be brought without any order having been made by the Judge of Probate.

This case was decided at Marianna.

Appeal from Jackson Circuit Court.

For a statement of the facts as presented by the record, reference is made to the opinion of the Court.

*Anderson & Milton* for appellants.

*McClellan & Barnes* for appellees.

WALKER, J., delivered the opinion of the Court.

Complainants filed their bill against defendants as sureties on the administration bond of M. H. Woodfin for account and delivery to them of what they are entitled to under the will of John Woodfin, deceased. There is a stipulation on file, that no objection is to be urged by defendants on the ground that the administrator is not made a party.

The allegations of the bill are that John Woodfin died in Jackson county, Florida, on 20th May, 1853, possessed of property amounting to near six thousand dollars, leaving the complainant Frances, as his widow, and the complainants William and John, and another son by the name of Memucan H. Woodfin, as his sole heirs at law.

That said John Woodfin, by his last will, disposed of all his property as follows:

"All my wordly effects I wish disposed of as follows, namely: Five hundred dollars, that I regard as belonging to my son, Memucan H. Woodfin, left as his portion of capital on a final winding up and closing of our mercantile business at Pulaski, Tennessee, *to be paid over to him;* also I wish him to have, as his portion of my estate, a note I hold on A. Oliver and Wesley Howard, of Giles county, Tennessee, for one thousand dollars, ($1,000) due Jan. 1, 1854.

"All the balance of my means, as well real as personal, I wish *to remain together for the common support* of my dear wife Frances and minor children William and John Woodfin, *so long as my wife shall remain single.*

"But in the event of a second *marriage,* she, my wife Frances, is to have one-third of all the property *then remaining,* and thus held *in common,* and the two boys William and John, one-third each, and they to have a *guardian appointed* to take care of their portion, see to their support, education, &c.

"Also, in the event of the *death* of my wife, the property so held *in common,* shall be equally divided between my two sons, William and John Woodfin.

"In the event of the *death* of either of my minor children, William and John, before his *marriage,* it is my wish that the surviving one should inherit his brother's portion.

"Also in the event of the death of the surviving one before his *marriage,* then his portion I wish equally divided between my son M. H. Woodfin and my wife Frances.

"It is also my wish that my wife Frances have power, (with the advice and approbation of M. H. Woodfin, and the Judge of Probate,) to dispose of any of the servants, in the event the same may seem to her and them for the

31

interest of the family, and that she have power to make a title and good conveyance to the same.

"Also, I wish her, the said Frances, to have power to' transfer any checks made payable to me, by endorsement or otherwise."

The bill further states that no executor was named in said will, and that it was duly proved and recorded in the Pro- bate office of Jackson county, on the 7th July, 1853, and that the said M. H. Woodfin was then and there appointed, by said court, administrator, with said will annexed, and that the defendant Staley, and the testator of defendant, McNealy, then and there executed with the said Memucan, the following administrator's bond :

"State of Florida, Jackson county : Know all men by these presents, that we, Memucan H. Woodfin, William McNeally, and N. O. J. Staley, are held and firmly bound unto Thos. Brown, the Governor of the State and his suc cessors in office, in the just and full sum of ten thousand dollars, for the true payment of which well and truly to be made, we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally, firmly by these presents. Signed with our hands, and sealed with our seals, this 7th July, 1853, and in the 78th year of the independence of the United States of America. The condition of the foregoing obligation is such, that if the above bound M. H. Woodfin, administrator *with the will annexed* of all and singular, the goods and chattels, rights and credits of John Woodfin, late of said county; deceased, do make or cause to be made a true and perfect *inventory* of all and singular the goods; chattels, rights and credits of the said deceased, which have or *shall come* to the *hand, possession, or knowledge of him,* the said M. H. Woodfin, or into the *hands* of *any person or persons for him,* and the same so made do cause to be filed in the office of the Judge of Probate for the county of Jackson, at or before the expiration of sixty days next

ensuing, and all the goods and chattels, rights and credits of the said deceased, which at any time after shall come to the hands or possession of said M. H. Woodfin, or into the hands or possession of any other person for him, do well and truly administer, and further make or cause to be made a true and just account of his administration *when required*, and all the rest and residue of said goods, chattels, rights and credits which shall be *remaining* upon said administrator's account, the same being *examined and allowed by the Judge of Probate* of Jackson county, and shall *deliver and pay to such person* or persons respectively, as the said court by their order or decree, *pursuant to the intent and meaning of the statute in such cases*, shall appoint and direct, then this obligation to be void and of no effect, otherwise to remain in full force and virtue.

[Signed.]                                    M. H. WOODFIN,
                                             WM. McNEALY,
                                             N. O. J. STALEY.

Approved July, 1853.

FREDERICK R. PITTMAN, Judge of Probate, Jackson Co.

The bill further states that soon after the death of said testator, certain persons were duly appointed to appraise, *and make an inventory* of the estate, and that said appraisers, on or about 26th July, 1853, appraised *all of said property which was produced to them by the said Memucan Woodfin*, and made *inventory* of the same, which was deposited in the office of the Judge of Probate, and a copy of which is exhibited with the bill, showing the amount of the appraisment to be $5,225 28. The bills states further that soon after the appointment and qualification of said M. H. Woodfin as administrator, and by *virtue thereof*, he possessed himself of the personal estate and effects of the said testator to a *large amount* and *value* and greatly more than sufficient to pay the just debts and funeral expenses, exclusive of the said sum of five hundred dollars, and the said note for one

thousand dollars, which were the entire amount bequeathed to said administrator. That the estate consisted principally of household and kitchen furniture, horses, waggons, buggies, two slaves, many promissory notes, checks and other evidences of debt.

That complainants have frequently applied to said Memucan to come to a full and true account of the estate of said testator, and to pay them respectively their shares of the residue of said estate remaining in his hands, after paying all of the just debts and funeral expenses of said testator, with which reasonable and just request the said Memucan H. Woodfin refused to comply.

That though more than five years have elapsed since the said Memucan H. Woodfin took upon himself the burthen of the execution of said will, and though by the laws of this State it was his duty to have settled his administration accounts before the Judge of Probate of Jackson county, yet he has failed and refused so to do.

That said Memucan H. Woodfin, administrator as aforesaid, and the complainant Frances Woodfin, on the 7th day of July, 1853, petitioned the Judge of Probate of Jackson County to grant the said M. H. Woodfin authority to sell a slave belonging to said testator, by the name of Watt, and in accordance with the prayer of said petition, the said Judge of Probate on the 22d day of August, 1853, granted an order authorizing said M. H. Woodfin *as such administrator*, to sell said slave Watt for cash, at either public or private sale, and that said M. H. Woodfin on or about Sept 2, 1853, sold said slave Watt at private sale to J. T. Myrick for the sum of eight hundred dollars, as complainants are informed and believe, which sum of money he appropriated to his own use; and that he also sold all the balance of the property of said testator mentioned in said inventory, the proceeds of which he has applied to his own use except a small amount for the payment of debts, and the sum of five hundred and

forty dollars paid to complainant Frances Woodfin on or about December 1st, 1853. That the checks were not endorsed by the said Frances, but were collected by said administrator and applied to his own use. That the property sold for much more than it was appraised at. That the three shares of factory stock mentioned in the inventory were sold by said Memucan for $380, on or about June 1st, 1856; that he sold the negro girl Ellen, in Columbus, Georgia, in January, 1854, and that said Frances in no way assented to said sale. That William McNealy is dead, and the defendant Adam McNealy is his only qualified executor, and is possessed of abundant means of the estate of said William to pay the demands of complainants; that complainants have repeatedly applied to defendants to pay them what is due them, but that defendants have always refused to do so, or to come to an account; that the debts against the estate were only about $200, and that said M. H. W. as administrator, received the sum of $5,800.

That the sale of Watt was without authority of law, the sale having been private, &c., and that the sale of Ellen and transfer of the checks were also illegal, and that defendants are liable therefor, and that it is the duty of defendants to perform the administration bond, &c.

The prayer of the bill is, that defendants be decreed to account and pay over to complainants whatever may be found to be due them from said estate.

To this bill the defendants demur on the ground,

1st. That Frances Woodfin was by the will made trustee for all the property named in the will except the legacies to M. H. Woodfin, and that said property therefore did not constitute assets in the hands of the administrator.

2d. Because the note of hand and checks, and shares of factory stock being made and executed by parties who then resided and still do, and always have resided beyond the jurisdiction of this Court and out of the State of Florida, are

not constituted assets with which said bond can be made chargeable.

3d. Because the conditions of the bond upon which the suit is founded are not in conformity with the provisions of the statute in such cases.

4th. Because there was no order to the administrator to pay over, as the bond in its conditions stipulated.

The court below ruled that the demurrer be sustained and that the bill be dismissed, from which ruling the complainants appealed to this Court.

We are of opinion that the first ground assumed in the demurrer is clearly bad. It is true that Frances Woodfin was Trustee, by the will, for the property coming to her and her two infant children. She was to hold it together for the common support of herself and infant children, but that surely constitutes no reason why the administrator should appropriate the whole of it to his own use, and deprive both her and them of it altogether. A trustee cannot get possession of the property devised to him or her in trust, except through the administrator with the will annexed where there is no executor, and doubtless the chief object in requiring this administrator to give bond was to secure to said Frances the delivery of the property so devised in trust. Nor do we think there is any validity in the second ground of demurrer. Promissory notes and checks, and shares of stock, although the persons owing the notes may reside abroad, or the bank on which the checks are drawn, or the factory in which shares exist, may be in another State, are certainly assets in the hands of the administrator here, if he realizes the money on them, as the administrator appears to have done here. Certificates of stock may be sold here just as well as where the factory happens to be. The notes may have been negotiated here, and the money raised on them as well as where the makers reside; and no one ever thinks of going to Philadelphia or New York, or New Orleans, to

collect checks drawn on either of those places. But even if he had gone to any or all of those places to ·get the money, still it was assets for which he was liable on his bond.

The third ground of demurrer we likewise hold bad.— The condition of the bond seems to us to be in conformity with the statutes.

The condition of the bond seems to cover the whole duty of the administrator with the will annexed; it is, that he shall file an inventory, &c., and further make or cause to be made a true and just account of his administration when required; and all the rest and residue of said goods, chattels, rights and credits which shall be found remaining upon said administrator's account, the same being first examined and allowed by the Probate Court of the county where the administration is granted, *and shall deliver and pay* to such person or persons respectively as the said Court by their order or decree, pursuant to the true intent and meaning of this act shall appoint and *direct*, &c. We understand that the meaning of this is, that after he has paid off all the debts he is to distribute under *the order of the court*. If there is a will, of course the court will order him to distribute according to the provisions of the will; if there is no will, then according to the provisions of the statute. But in either case he is to make a final disposition of the property of the estate under the order of the court; and it is frequently much more important that he should distribute under the order of the court when there is a will than when there is not, for the provisions of the statute are plain and he is not likely to make a mistake, but the provisions of the will are not always so.

The fourth ground of demurrer is that no order was obtained from the Probate Court directing the administrator to pay over (as is contained in the conditions of the bond,) previous to the filing of the bill.

We do not think that this ground of demurrer is well ta-

ken. The statute requires the administrator to make *annual settlement*, and limits the time for a *final settlement* to two years after the grant of administration. The bond also provides that he shall make a true and just account of his administration when required, and " to pay to such person or persons respectively, as the court by their order or decree, pursuant to the true intent and meaning of this act shall appoint and direct." Now the bill expressly alleges that the administrator was requested and urged by the complainants to come to an account and settlement of the estate, but that he *refused so to do.* How could the Court of Probate make any *order to pay over*, unless the accounts were before him? and who was to exhibit the accounts if the administrator did not? We think the counsel for the defendants has misconceived the design and meaning of this condition of the bond. It is evidently intended for the protection of the administrator when he may be in doubt as to the proper parties who are entitled to receive the estate. It never was intended to be a *condition precedent* to calling the administrator to account.

In conclusion, we may remark, that however the law may be as to the necessity of first fixing the amount of indebtedness against the administrator before proceeding against the sureties, we understand the stipulation entered into by the defendants and filed with the record to dispense with any requisition of that kind, and that they are to become the accounting parties, provided the bond is binding upon them.

It is therefore ordered and adjudged that the decree of the chancellor rendered on the ———— day of ———— 185—, whereby it was adjudged that the bill filed in this case should be dismissed, be reversed and set aside with costs, and that the cause be remanded to the court below with directions that the defendants have leave to answer and to take such further proceedings therein as may be conformable to equity.